*AUSA Assigned: RRB*

*County of Investigation: Okanogan*

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 21, 2022

SEAN F. McAVOY, CLERK

*In Re: Affidavit for Criminal Complaint charging DEZMONIQUE TENZSLEY with Felon in Possession of Ammunition.*

## AFFIDAVIT

STATE OF WASHINGTON   )
                      ) ss
County of Spokane     )

### INTRODUCTION AND AGENT BACKGROUND

**1.** I, David DiBartolo, Special Agent, being first duly sworn on oath, depose and state the following:

**2.** I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2010. I am currently assigned to the Seattle, Washington FBI field office, specifically to the Spokane, Washington Resident Agency, where I have worked various criminal violations. During my career as a Special Agent, I have conducted surveillance, interviewed suspects, and executed arrest and search warrants. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. One of my responsibilities is the investigation of federal criminal law related to crimes violent crimes.

**3.** My experience as an FBI agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses and subjects, executing search and arrest warrants, and operating informants. I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7),

as a Special Agent of the FBI, and I am empowered by law to conduct investigations of, and to make arrests for, federal felony offenses.

4. In the course of this investigation, I have worked closely with several other law enforcement officers, including Special Agent Brian Hoff, and I have relied on statements that he has made to me orally and/or in writing. Additionally, I reviewed the audio from Special Agent Briant Jacobs's interview with Sergeant Kris Brakebill. I also confirmed from Special Agent C. Todd Smith from the ATF that the ammunition was manufactured outside Washington and, therefore, moved in interstate commerce.

## INVESTIGATION AND PROBABLE CAUSE

5. As set forth herein, I submit there is probable cause to believe that DEZMONIQUE TENZSLEY (hereafter "TENZSLEY") violated 18 U.S.C. § 922(g)(1) (Felon in Possession of Ammunition).

6. On October 20, 2022, law enforcement responded to potential gunshots at a trailer on Keller, Washington on the Confederated Tribes of the Colville Reservation, which is in the Eastern District of Washington. Upon arrival, police observed two deceased victims, who had been shot and killed. Initial reports indicated that the suspects in the homicide may have fled in a red sedan.

7. That same evening, Colville Tribal Police Sergeant Kris Brakebill, who was assisting the FBI with the investigation into homicides and who has a Special Law Enforcement Commission permitting him to investigate violations of federal law, was responding code (with lights and sirens) from Omak when he heard dispatch describing a red Honda sedan as a possible suspect vehicle. While traveling on Cache Creek Road, Sergeant Brakebill passed a red vehicle traveling the opposite direction as Sergeant Brakebill. It did not look like a Honda to Sergeant Brakebill,

but given the reaction of the people in the car to his lights and sirens, Brakebill decided to make sure.

8. Sergeant Brakebill made a U-turn and pursued the red car. The red car continued at a high rate of speed – Brakebill indicated he had to drive approximately 80-85 miles per hour to catch up, and drive what I am told is approximately 40 miles per hour over the posted speed limit. The red car pulled over and stopped along the side of the road. Sergeant Brakebill then radioed dispatch and provided the vehicle description and license plate number. Sergeant Brakebill then began issuing commands from his patrol car's public announcement system, directing the driver of the vehicle to show his hands.

9. Around this point, both doors on the passenger-side opened, and two individuals, who appeared to be late-teen Native American females, got out of the car. The two females crossed a ditch next to the road and sat down on the slope across from the ditch. Sergeant Brakebill then saw a rear door open slightly and what looked like the barrel of a semi-automatic handgun emerge from the opened door. Sergeant Brakebill could not see the individual holding the gun. Upon seeing the gun, Sergeant Brakebill ducked down toward the center console of his police vehicle. The individual holding the gun then fired a single shot toward Sergeant Brakebill's vehicle. The red car then drove away, abandoning the two females.

10. Sergeant Brakebill pursued the red car and called out the shot fired and requested backup over the radio. Sergeant Brakebill then pursued the vehicle for approximately two miles.

11. After rounding a turn, Sergeant Brakebill again saw the red car, which was parked on the road approximately one sixteenth of a mile ahead. Sergeant Brakebill then saw what appeared to be an individual seated on the rear driver's side windowsill aiming what Brakebill assumed to be a firearm, though Brakebill could

not see it clearly. As Sergeant Brakebill came around the turn, the individual fired a single shot, which went through the windshield of Sergeant Brakebill's vehicle and struck him in the forearm. The red car then drove away.

12. After being hit, Sergeant Brakebill accidentally shifted his vehicle into neutral, momentarily lost control of his police car, and slowed down. After regaining control of the vehicle, Sergeant Brakebill continued to pursue in the direction the suspect vehicle traveled. Sergeant Brakebill reported his injuries to dispatch and requested assistance. Sergeant Brakebill regained visual contact of the red car and observed that it was backed into a dirt road up ahead. The driver-side of the red sedan was facing the toward Sergeant Brakebill.

13. When Sergeant Brakebill saw that the red car, Sergeant Brakebill stopped to keep his distance. At this point, an individual inside the red car fired another shot at Sergeant Brakebill. The shot hit the dirt approximately 40 feet in front of Sergeant Brakebill's police vehicle. The red car then pulled forward slightly, paused briefly, and drove away. Sergeant Brakebill pursued from a distance and lost visual contact. Sergeant Brakebill began calling out on the radio locations for additional officers to respond to.

14. During the evening hours of October 20, 2022, Jordan Martin, who was one of the females who was let out of the red sedan, was interviewed at the Coville Tribal Police Department in Nespelem, WA by FBI Special Agent (SA) Brian Hoff and Colville Tribal Police Department Chief Steve Brown. Martin confirmed that she and Morningstar Tonasket were inside of the red sedan during the car chase and shooting. She and Tonasket had begun drinking earlier, and at some point that day, they met up with three men (Zachary Holt, Curry Pinkham and a third person, whom she did not know, who she described as Zach's friend and stated was skinny,

grey/blue eyes (perhaps with colored lenses), brown skin, bald-headed with a black ball cap).

15. Martin witnessed the men put several firearms inside her car in a small black duffle bag. Martin described these firearms as a light tan and navy shotgun, and a black small gun. Martin explained that the group witnessed police drive past them with their lights on. The driver kept going, and one of them realized a police officer was behind them. At this point, the driver sped up.

16. The driver stopped at the intersection of Owhi Loop Road and Cache Creek Road. There, the men told the girls they did not want them to get involved. The girls, including Martin, then got out of the vehicle and walked toward the ditch. Within approximately five seconds Martin heard two gunshots.

17. During the investigation, the FBI and Colville Tribal Police identified TENZSLEY as one of the occupants as a known associate of Holt, who was identified to as a passenger inside the red sedan. TENZSLEY also appeared to match the description that Martin provided of the unknown person who was with Pinkham and Holt inside the red car.

18. The next morning, October 21, 2022, a homeowner reported that people were trespassing at a residence located at 401 7th Street in Nespelem, Washington. Colville Tribal Officer Paulette Manual and her partner Thomas Cohen responded and located the two individuals – TENZSLEY and Zachary Holt, who was identified by name as being inside the red sedan that fired on Sergeant Brakebill—who were being held at gunpoint by the homeowner in the backyard of the home. At the time he was placed under arrest, TENZSLEY provided the name: Antonio. TENZSLEY also had a black ball cap in his possession, which matched Ms. Martin's description. Below is a known photograph of TENZSLEY:



**19.**     During a search incident to arrest, Colville Tribal Police Officer Manual located a debit car with TENZSLEY's actual name on it. They also recovered 9mm rounds of ammunition and a magazine. A nexus analysis of the ammunition confirmed the ammunition was manufactured outside the state of Washington.

**20.**     TENZSLEY has multiple felony convictions. Specifically, in case number 09-1-04955-8, TENZSLEY was convicted, in Pierce County Superior Court, of Escape in the First Degree, and sentenced to 22 months. He was also convicted, in case No.: 121001580, in Asotin County Superior Court, of, inter alia, Assault in Second Degree and sentenced to 84 months.

## CONCLUSION

**21.**     Based upon the information above and your affiant's knowledge and experience, your affiant believes that DEZMONIQUE TENZSLEY unlawfully possessed ammunition in violation of 18 U.S.C. §§ 922(g)(1).

*David D. Bartolo*
David DiBartolo, Special Agent
Federal Bureau of Investigation

Sworn to ~~in my presence and~~ , telephonically and *JAG* signed electronically on this ~~22nd~~ 21st *JAG* day of October, 2022.

_____
James A. Goeke
United States Magistrate Judge